## ECHOLS *v.* THE STATE.

1. In giving in charge so much of section 1036 of the Penal Code as relates to recommendations by juries concerning punishment, the judge should not omit to state that the recommendation of a jury, made under its provisions, will be effectual only in case it is approved by him.   He should not, however, give in charge the last sentence of that section, which relates to the power which the judge, independently of any action by the jury, has over penalties.

2. Though the charge in the present case did not, in all respects, conform to what is above laid down, a new trial will not be ordered; for the guilt of the accused was strongly and conclusively established, and the conviction was fully approved by the trial judge.

3. Nothing will be heard from a juror which can have the effect of in any manner impeaching his verdict.

4. Counsel for the accused can not, as matter of right, when he is making his statement to the court and jury, ask him questions or make suggestions to him.   It is entirely a matter of discretion with the judge whether or not such things shall be allowed.

Argued December 4, 1899. — Decided January 25, 1900.

Indictment for assault with intent to murder.    Before Judge Candler.    Newton superior court.    September term, 1899.

*L. L. Middlebrook, F. C. Foster,* and *J. M. Pace,* for plaintiff in error. *W. T. Kimsey, solicitor-general,* contra.

LUMPKIN, P. J. In *Johnson* v. *State,* 98 *Ga.* 78, this court held that, on the trial of a person indicted for the commission of a felony other than one of those enumerated in section 1036 of the Penal Code, it was the duty of the court, whether so requested or not, to inform the jury of so much of the provisions of that section as related to their power, in the event of conviction, to recommend that the accused be sentenced as for a misdemeanor. To properly give in charge the provisions just indicated necessarily, we thought, involved telling the jury that "when such recommendation is approved by the judge presiding at the trial," the offense must be punished as a misdemeanor. In other words, we intended to lay down the proposition that the judge ought to instruct the jury concerning their power to make the recommendation, and also let them understand that it would be effectual to reduce the penalty only when approved by him. In *Cunningham* v. *State,* 103 *Ga.* 239, we were undertaking to deal with another and entirely different matter. The above-cited section, after declaring that the jury might make the recommendation mentioned and when it should have the effect of mitigating the punishment, embraced an additional provision in these words: "If the judge trying the case sees proper, he may, in his punishment, reduce such felonies to misdemeanors." We held in the case last cited that the judge should not give in charge to the jury that part of the section which we have just quoted. In the opinion (page 240) it was said we did not think that the judge should "instruct the jury that, with or without a recommendation on their part, he could, if he saw proper, punish the accused as for a misdemeanor." We did not mean to convey the idea that it would not be proper for the judge, in a case to which this section is applicable, to inform the jury that their recommendation would, if approved by him, reduce the punishment to that of a misdemeanor. Indeed, we think he ought to so inform them, in order that they may understand exactly what the law says with reference to their recommendation and its effect. Our idea in the last case was to lay down the rule that the judge should not inform the jury what his power was

in such cases independently of their action in the premises. We did not, perhaps, express ourselves with sufficient distinctness. Candor constrains the writer to admit that his language was not as perspicuous as it might have been. We hope that we have this time made the matter clear.

The application of the foregoing to the case in hand will now be made. Echols, the plaintiff in error, was tried and convicted under an indictment charging him with the offense of assault with intent to murder. The judge charged the jury: "In all cases of assault with intent to murder, the jury may, in the event of their finding the defendant guilty, recommend that he be punished as for a misdemeanor." He did not add that such a recommendation would be effectual only in the event of its approval by the judge, but followed the above-quoted instruction with the words: "If you find the defendant guilty in this case, the form of your verdict will be: 'We, the jury, find the defendant guilty.' And that would mean of an assault with intent to murder. If you find the defendant guilty and see fit to recommend that he be punished as for a misdemeanor, the form of your verdict will be: 'We, the jury, find the defendant guilty, and recommend that he be punished as for a misdemeanor.'" There was a verdict of guilty, with a recommendation that the accused be punished as for a misdemeanor. The judge very properly declined to approve this recommendation, and sentenced the accused to a term in the penitentiary. In his motion for a new trial, he complains that the effect of the instructions above quoted was to mislead the jury into the belief that their recommendation would constrain the judge to impose upon the accused a misdemeanor sentence, and that but for this belief they would not have found him guilty. We are not prepared to say that the jury were misled as claimed. The issue in the case was a simple one. It was not disputed that an outrageous assault with intent to murder had been committed. The only question in controversy was: Did the accused perpetrate the crime? With the determination of this question, that of punishment had not the slightest connection. Whether the accused was, in case of conviction, to be fined one dollar or sent to the penitentiary for ten years

could have no bearing upon the question of his guilt or innocence. It was upon the jury to say whether or not the evidence satisfied them beyond a reasonable doubt of his guilt. Its sufficiency for this purpose could not be affected by the result to follow the verdict. They said under their oaths that the accused was guilty, and did so upon testimony fully warranting their finding. If any juror consented to this verdict under the belief that the punishment must be as for a misdemeanor, but would not have done so had he known the judge had the power to sentence as for a felony, he occupies the position of saying in effect: "Though not satisfied beyond a reasonable doubt of the guilt of the accused, I am willing to find him guilty if he is to receive a light punishment;" or, "Though fully satisfied that the accused committed a terrible crime for which he deserves a term in the penitentiary, I will not agree to convict him unless he escapes with the penalty prescribed for misdemeanors." A juror capable of assuming either of these positions would be equally capable, after solemnly agreeing to a verdict, of swearing that he had not done so, or that he would not have done so if he had not believed his recommendation would be controlling in the matter of punishment. In this very case an attempt was made to show by the affidavits of some of the jurors that they would not have consented to the verdict if they had not believed from the judge's instructions that he would be compelled by the recommendation to inflict a misdemeanor penalty. The judge rightly declined to consider these affidavits. He could not, nor can we, do otherwise than ignore them entirely; for if anything is settled in this State, it is that nothing will be heard from a juror which can have the effect of impeaching in any manner his verdict. It results that the verdict in this case must stand. The evidence in support of the finding of fact embraced therein, viz., that the accused was guilty, is supported by strong and conclusive proof and fully approved by the trial judge. In the absence of any legal reason for so doing, we can not and will not assume that the jury would have found otherwise if the judge had informed them that their recommendation as to punishment would not be binding upon him. In a weak or doubtful case, the charge complained

of might be cause for a new trial; but we will not, in one like the present, reverse the judgment merely because of a possibility that the jury would have failed to make a correct finding of fact if the charge on the subject of punishment had been in strict accord with the law.

It will, of course, be understood that much of the foregoing discussion is not applicable to a case where the recommendation of a jury on the subject of punishment is compulsory.

The only verified ground of the motion for a new trial not already dealt with alleges error in not allowing counsel for the accused to make to him, while making his statement to the court and jury, a suggestion for the purpose of calling his attention to a matter to which he had omitted to refer. This would have been the same thing, in effect, as allowing the counsel to ask the accused a question, and this court has ruled that counsel can not, as matter of right, do such a thing. "In making his own statement to the court and jury, the prisoner is not under examination, and his counsel has no right to ask him questions. Doubtless the court might, at the prisoner's request, permit questions to be put to him, as matter of discretion." Bleckley, J., in *Brown* v. *State*, 58 *Ga.* 214, 215. Doubtless this discretion will, on all proper occasions, be exercised favorably to the accused.

*Judgment affirmed.    All the Justices concurring.*