## 5561. TAYLOR *v.* THE STATE.

On the trial of one indicted for the commission of a felony, other than one of those enumerated in section 1062 of the Penal Code, it is the duty of the court, whether so requested or not, to inform the jury that should they find the defendant guilty of a felony and see proper to recommend that he be punished as for a misdemeanor, their recommendation would not be binding upon the trial judge, nor effective unless approved and acted upon by him.

DECIDED APRIL 18, 1914.

Indictment for assault with intent to murder; from Tift superior court—Judge Thomas. February 7, 1914.

*C. C. Hall, Fulwood & Skeen,* for plaintiff in error.

*J. A. Wilkes, solicitor-general,* contra.

RUSSELL, C. J. The accused was indicted for the offense of assault with intent to murder, alleged to have been committed upon the person of one Powell, by cutting and stabbing him with a pocket-knife. The jury found the defendant guilty of assault with intent to murder, with the recommendation that he be punished for a misdemeanor. The judge, as was his right, disregarded the recommendation and sentenced the defendant to labor five years in the penitentiary. Only one of the assignments of error in the motion for a new trial is insisted upon before this court, and in connection therewith counsel asks that the ruling of this court in *Gaskins* v. *State,* 12 *Ga. App.* 97 (76 S. E. 777), be reviewed and overruled. It is alleged that the court erred in that after having charged the jury that they would be authorized, should they find a verdict of guilty, to go further and recommend that the defendant be punished as for a misdemeanor, the court failed, in the same connection or elsewhere, to inform the jury that such a recommendation, to be effective, would have to meet with the approval of the judge. In other words, the contention is that it is error for the court merely to instruct the jury that they may recommend that one on trial for a particular felony be punished as for a misdemeanor, without also informing the jury as to the legal effect of the recommendation should they see proper to make it; that the effect of such an instruction is to lead the jury to infer that the recommendation would be binding upon the court; thus tending to induce them to agree to a verdict different from that which they would render if they knew that their recommendation as to the punishment might be wholly ineffectual and futile. Of course, if the jurors should be influenced by their knowledge of the fact that the judge can entirely disregard the recommendation of a misdemeanor punishment as an excuse to acquit one whom they are satisfied is guilty of a violation of the penal law, they would be subject to the criticism of Lumpkin, P. J., in *Echols* v. *State,* 109 *Ga.* 511 (34 S. E. 1039). He said: "It was upon the jury to say whether or not the evidence satisfied them beyond a reasonable doubt of his guilt. Its sufficiency for this purpose could not be affected by the result to follow the verdict. They said under their oaths that the accused was guilty, and did so upon testimony fully warranting their finding. If any juror consented to this verdict under the belief that the punishment must be as for a misdemeanor, but would not have

done so had he known that the judge had the power to sentence as for a felony, he occupies the position of saying in effect: 'Though not satisfied beyond a reasonable doubt of the guilt of the accused, I am willing to find him guilty if he is to receive a light punishment;' or, 'Though fully satisfied that the accused committed a terrible crime for which he deserves a term in the penitentiary, I will not agree to convict him unless he escapes with the penalty prescribed for misdemeanors.' A juror capable of assuming either of these positions would be equally capable, after solemnly agreeing to a verdict, of swearing that he had not done so, or that he would not have done so if he had not believed his recommendation would be controlling in the matter of punishment." However, as pointed out by Justice Atkinson in *Johnson* v. *State,* 100 *Ga.* 78 (25 S. E. 940), the recommendation which may be made by the jury upon the trial of certain felonies, "while not conclusive upon the judge, is nevertheless a persuasive influence by which the jury may lawfully and appropriately appeal to his discretion; and the court should, whether so requested or not, inform them as to the provisions of the code on this subject." Furthermore, the pointed language of Presiding Justice Lumpkin loses much of its force and point when we reflect that while the question primarily before the jury is that of the guilt or innocence of the accused, still the jury are required to give the benefit of every reasonable doubt in favor of innocence; and not only this, but in case they have any doubt as to whether the accused is guilty of one or the other of two offenses of the same nature (and even though they be satisfied that he is guilty of one or the other of differing grades of the same offense), they must again apply to the defendant the doctrine of reasonable doubt and find him guilty only of the lesser offense. The language of Presiding Justice Lumpkin might be applied with full force in a case where the offense is of such a nature that the defendant must be acquitted or found guilty of the offense as charged; but in a case where the jury, though satisfied that the accused was guilty of some offense, are doubtful as to which offense he committed, and could with propriety and without just criticism find the accused guilty of either, the question of the probable effect of their recommendation could well be a matter of just concern to conscientious jurors.

The General Assembly, for good and sufficient reasons, saw proper

to confer upon juries in felony cases (other than those expressly excepted) the right of recommending, at their pleasure, that the defendant be punished as for a misdemeanor instead of being subjected to the pains and penalties previously imposed upon persons found guilty of such felonies. The General Assembly also, very wisely, gave the trial judge the right to disregard these recommendations; and more than that, it authorized him, in the exercise of a humane discretion, as to such a felony, to impose a sentence as for a misdemeanor, even though the jury declined to consider or refused to make such a recommendation. But it is not always to be supposed that, because the jury could have declined to render the specific verdict which they did in fact return into court (if they had known that the judge could disregard their recommendation that the defendant be punished as for a misdemeanor), the jurors disregarded their oath, or exceeded their power of passing only upon issues of fact. Though a jury may be influenced by the knowledge that the judge can disregard their recommendation that a misdemeanor sentence be imposed, it is not necessarily to be inferred that they will for that reason render an illegal verdict, or that they would in any case be impelled or compelled to find a verdict of acquittal; for in many cases the charge and the evidence may be such as to make the case upon the facts doubtful, and yet authorize, as a matter of law, a conviction either of a felony with a recommendation, or of a misdemeanor (included within the charge), where a sentence as for a misdemeanor would follow as a matter of course. The jury has no power whatever to interfere with the discretion of the trial judge in imposing sentence, whereas in such felony cases the judge can impose a sentence as for a misdemeanor even though the jury may have been opposed to giving the case that direction. From the fact that the jury has no power in this State (as it has in many others) to fix the sentence of one convicted of crime, it does not follow that the jury does not possess the power to grade the offense, and the right (similar to that of grading) of considering the probable result, in those cases in which they are empowered to recommend a reduction of the punishment.

The offense charged in the present case well illustrates the thought we have in mind. The accused is charged with assault with intent to murder. The assault is alleged to have been made with a knife;

and it is alleged that the defendant cut and stabbed the person assaulted. Under the accusation evidence might be adduced which would authorize any one of six verdicts. The defendant might be acquitted. He might be found guilty of assault. He might be found guilty of assault and battery, if the blow from the knife failed to bring blood. He might be convicted of stabbing, if the knife had drawn blood. He might be convicted of assault with intent to murder. And this last finding might be modified by recommendation. If the trial resulted in a verdict finding the defendant guilty of either assault, assault and battery, or stabbing, the court could only sentence as for a misdemeanor. Under a verdict of assault with intent to murder, with or without a recommendation, the judge might sentence either for a misdemeanor or for a felony, in his discretion. Under the accusation in this case the jury were authorized to find the accused guilty of stabbing, or to return, as they did, a verdict of assault with intent to murder, with recommendation that the accused be punished as for a misdemeanor. From a purely legal standpoint, neither verdict could be criticised, if the jury had found the one instead of the other. And yet, if they had found a verdict for stabbing, the recommendation which the jury thought proper,—to wit, that the defendant be punished only as for a misdemeanor, would necessarily have been enforced by law. Who can say, from the state of the record, in which there is no evidence of express malice, and where the evidence of implied malice is doubtful, that had the jury known that the court could disregard the recommendation as to penalty, which the law permitted them to make, they would not have resolved the doubt by finding the defendant guilty only of stabbing? Who can say that the jury did not entertain doubt which, under the law, should have operated to reduce their finding from assault with intent to murder to stabbing, and yet considered the extension of this right immaterial, because they were of the opinion that the penalty would be the same under either verdict?

We have said so much because this view of the matter did not present itself to the court at the time we made the ruling in *Gaskins* v. *State,* supra, which we feel constrained to modify. In that case the evidence of the defendant's guilt of the offense as charged was deemed so conclusive—since the jury rejected the theory of self-defense—that the court overlooked for the moment the ruling of

the Supreme Court in *Johnson* v. *State,* supra, and the rulings of this court in *Glover* v. *State,* 7 *Ga. App.* 628 (67 S. E. 687), and *Benton* v. *State,* 9 *Ga. App.* 291 (71 S. E. 8), adopting the thought of Presiding Justice Lumpkin as expressed in the *Echols* case, supra.　Upon more mature consideration we are convinced that, while the result reached in the *Echols* case was, no doubt, correct, still the ruling therein is based upon the particular facts of that case, and what is said upon the point now under review is, in effect, nothing more than a holding that the evidence demanded a verdict, and that therefore the error in the charge, as to the jury's right to recommend, was in that case harmless.　The learned judge who delivered the opinion says: "It was not disputed that an outrageous assault with intent to murder had been committed."　Assuming this to be true, the case was placed under the operation of the well-settled principle that in a case where no verdict other than that rendered could lawfully have been returned, any errors in the trial are immaterial.　In no event can the holding in the *Echols* case be construed as ruling more than that there may be cases in which an erroneous charge on the subject of the jury's right to recommend may be harmless, and that a new trial will not be ordered where the guilt of the accused is conclusively established.　In this respect the *Gaskins* case follows the case of *Echols,* supra; and upon the general principle stated above, on which they both depend, the correct result was reached.

Learned counsel for the plaintiff in error, in his argument, very properly admitted that there is no merit in his assignment of error if the ruling of this court in the *Gaskins* case, supra, is adhered to; and this statement is true, since the plaintiff in error relies only on the assignment of error which complains of the charge of the court on the subject of the jury's right of recommendation.　In the *Gaskins* case it was held that the court did not err, after instructing the jury that they had the right to recommend that the accused be punished as for a misdemeanor, in failing to add that the court had the power to disregard such recommendation; and, no doubt, our failure to disapprove the instruction in the *Gaskins* case led the learned trial judge into the same error in the case at bar.　Even Homer sometimes nods, and we may perhaps be permitted to say that in the overwhelming volume of cases which call for painstaking review on the part of the members of this

court, it is a matter of surprise and congratulation that our errors are not more frequent and serious. In no case, however, should the doctrine of the infallibility of courts of last resort, or the presumption that the court knows all the law (which is sometimes a presumption violent in its nature and unsupported by facts), lead us to adhere to a ruling after we are convinced that it is erroneous. For this reason we are compelled to overrule the holding to which we have referred, and to withdraw the language employed in the *Gaskins* case as at least too broad for general application. Under the well-established rule that the oldest decision must control, the ruling in the *Johnson* case, supra, would be controlling, even if anything held in later adjudications conflicted with it; and, for reasons already stated, we do not think what is said in the *Echols* case, considered as a whole, is in conflict with the ruling in the *Johnson* case. The effect of the ruling in *Cunningham* v. *State*, 103 *Ga.* 239 (29 S. E. 926), was merely to explain what had previously been ruled in the *Johnson* case on the point that the jury are entitled to know the full effect of their action, provided they recommend that the punishment be reduced to a misdemeanor, and are not at all concerned in the discretion conferred upon the judge independently of whether they made the recommendation or not. It is to be noted, however, that in the *Cunningham* case the error was not held to be cause for a new trial. In *Taylor* v. *State*, 110 *Ga.* 151 (35 S. E. 162), it was held that "A trial judge should never, in cases to which section 1036 of the Penal Code [section 1062 of the Penal Code of 1910] is applicable, fail to charge the jury that they may recommend that the punishment be as for a misdemeanor, and that such recommendation will be effectual if approved by the court." And in the opinion delivered by Chief Justice Simmons the ruling in the *Johnson* case is explained, and it is expressly stated that the error for which Johnson was granted a new trial consisted as much in the failure of the judge to inform the jury as to the effect which might be given to their recommendation as in the failure to inform them that they had the right to recommend. In *Taylor's* case no direct ruling was made upon the point here involved, other than as stated in the headnote which we have quoted, and the judgment of the lower court was reversed (after the statement of several apparent errors) upon the general ground that the court was not satisfied that the accused had been

given a fair, legal, and impartial trial. It will thus be seen that there is some language in the different decisions to which we have referred which might leave it doubtful whether the grant of a new trial is required when, as in this case, the judge merely failed to inform the jury that their recommendation would amount to nothing unless approved by the court. But in the *Johnson* case, supra, as in this, no question other than the alleged error of the judge in charging upon the jury's power to recommend misdemeanor punishment was involved; and though it appears in the *Johnson* case that the judge failed to make any reference whatever to the matter of the jury's right of recommending misdemeanor punishment, it was ruled that the court should, whether requested or not, inform the jury as to the provisions of the code section upon this subject. This, as construed by later decisions, means instructions upon the entire section, so far as its provisions affect the jury, omitting any reference to the discretion, lodged solely in the judge, to impose sentence as for misdemeanor when the jury refuses to recommend.

The ruling in *Lingerfelt* v. *State*, 125 *Ga.* 4 (53 S. E. 803, 5 Ann. Cas. 310), while not directly in point, seems to sustain the view that the scope of the trial judge's instructions should be sufficiently broad to apprise the jury that their recommendation is not conclusive upon the trial judge in case he should see proper to disregard the recommendation; to the end that the jury may exercise at least such right of choice in the penalty to be affixed to their finding as the law may permit. In *Lingerfelt's* case, it is true, the instructions of the trial judge were not held to be erroneous; and this was because the jury were told that "if the judge should approve [the recommendation], he would be punished as for a misdemeanor." The court held only that in the absence of a request for a more specific charge on the subject, there was no error in failing to explain to the jury that the judge could disregard the recommendation and punish as for a felony; and it is therefore clear to our minds that the instruction was held sufficient because further explanation would only have made more plain the negative pregnant couched in the language used by the trial judge. When the judge, in *Lingerfelt's* case, told the jury that the accused would be punished as for a misdemeanor if he approved the recommendation, it was easily to be inferred by the jury that if the recommendation as to misdemeanor punishment was not approved, the accused would be punished as for a felony.

In *Glover* v. *State,* supra, this court took this view of the point now sub judice, and based its decision on that of the Supreme Court in *Johnson* v. *State,* supra. However, in that case the judge failed to give the jury any instruction whatever as to the provisions of section 1062, and, as it was a matter relating only to the punishment; the judgment of the lower court, refusing a new trial, was reversed only on condition that the trial judge, in his discretion, which he was directed to use, should see fit to refuse to sentence the accused as for a misdemeanor. In dealing with this phase of the case Judge Powell, speaking for the court, said: "The offense of which the defendant was convicted is one of those as to which the jury have the right to make the recommendation that the defendant be punished as for a misdemeanor. The court failed to give the jury any instruction upon this point. In the *Johnson* case, supra, the judgment of the trial court was reversed solely because of this failure. That case has been followed in several adjudications. This, however, is a matter relating to the punishment, and not affecting the guilt or innocence of the defendant. This court has no power to interfere with the punishment inflicted by the lower court, so long as it is within the limits fixed by the statute; and the direction we are now about to give is not intended as an attempt to control the discretion of the lower court, but merely to put the trial judge in the position where he can more easily exercise it. For the purpose of curing the error pointed out, we reverse the judgment, but on the condition and with the direction that the trial judge may, in his discretion, reduce the punishment of the defendant to a misdemeanor punishment, and that if he does so, no new trial shall ensue. On the other hand, if the trial judge does not think that this is a case in which the interests of public justice can best be served by the infliction of a misdemeanor punishment only, it is directed that a new trial shall be granted." We shall give the case at bar the same direction that we gave *Glover's* case. It is true that there was not in this case an entire omission to instruct the jury upon the subject of their right to recommend, but there was a failure to give the jury information which, in our opinion, might have been a material factor in inducing the verdict rendered by them, and which, if supplied, might have induced a verdict for stabbing; which verdict, under the evidence, might have been authorized. Since the point, however, concerns only the punishment,

and the plaintiff in error can have no real complaint except that he might have been sentenced for a misdemeanor, it is directed that if the judge of the superior court, in the exercise of his exclusive discretion, sees proper to reduce the punishment to a misdemeanor, no new trial shall be granted. On the other hand, however, if the trial judge is of the opinion that the interests of public justice can not be served by the infliction of a misdemeanor punishment, it is ordered that a new trial be granted, to the end that the error be corrected.                    *Judgment reversed, with direction.*