### 5943. SWAIN *v.* THE STATE.

1. The charge of the court touching the right of one brother to defend another fairly submitted to the consideration of the jury the law in reference thereto, and was authorized by the evidence.

2. Where the court, on the trial of one accused of assault with intent to murder, properly charged the jury as to their right to recommend that the defendant be punished as for a misdemeanor in the event they found him guilty of that offense, and that this recommendation would be effective in the event only that the court approved it, and, in the same connection and immediately following this instruction, charged that in

the event that the jury found the defendant guilty of the offense of shooting at another (which the court informed them was a lower grade of felony), they would have "the right to add a recommendation to misdemeanor punishment to a verdict of that character, under the same conditions as I have just explained to you that you could add one to a verdict of guilty of assault with intent to murder," the charge was not subject to objection on the ground that the court failed to instruct the jury properly as to the force and effect of a recommendation from them that the defendant be punished as for a misdemeanor, in the event they found him guilty of shooting at another. Especially is such an exception without merit where it appears that the jury declined to exercise clemency, and did not recommend a misdemeanor punishment.

DECIDED DECEMBER 9, 1914.

Indictment for assault with intent to murder—conviction of shooting at another; from Sumter superior court—Judge Little-john. July 20, 1914.

*J. B. Hudson,* for plaintiff in error.

*J. R. Williams, solicitor-general,* contra.

WADE, J. According to the evidence of the only two witnesses for the State, about 10 o'clock on the night of December 20, 1913, in the town of DeSoto, in Sumter county, J. C. Harp was on his way home, when he overtook his brother, H. A. Harp, a marshal of the town, not then on duty, and they walked on together. As they approached the home of J. C. Harp they heard loud cursing, and when they arrived on the scene they found the defendant, Tim Swain, standing alone, by the side of the garden at the edge of the yard and close to the house, pouring out a stream of profanity, apparently directed at no one in particular, but perhaps intended as an attempt on his part to express to the circumambient air alone an unfavorable opinion of the universe at large, which for the time being he appeared to entertain. One of the witnesses said, "Tim didn't seem to be cursing us, didn't seem to be cursing anybody; he was just drunk and cursing;" and the other witness said that the defendant "was there at the house cursing, was just cursing at random." According to the testimony for the State, when the two witnesses approached the defendant, J. C. Harp asked him "what he was doing cursing there," and "if he didn't know he lived there," and, when the defendant answered "Yes," told him that he could not curse there; whereupon the defendant said he "would do as he damned pleased about that," and when J. C. Harp replied, "You had better be doing it pretty quick, because you have got to leave here, you can't stand here and curse this way," the defendant

"moved up to" J. C. Harp, and "grabbed hold of him." J. C. Harp testified that thereupon he shoved the defendant down; and H. A. Harp testified that he (H. A. Harp) struck the defendant with his fist on the side of the head, and hit him with a pistol and knocked him down; that the defendant was drunk and cursing; that he did not arrest him, and he would not have knocked the defendant down if he had not "jumped" on his brother J. C. Harp, and in effect that he struck the defendant to protect his brother. The two witnesses disagreed to the extent that H. A. Harp stated that he alone struck the defendant with his fist and pistol, and each testified that the other did not, so far as he saw, shove or strike the defendant. Both agreed, however, that when the defendant fell or was shoved or knocked down, he got up again, ran off a distance stated as from 15 to 20 feet, and 15 to 20 steps, and then turned around and fired his pistol back towards them twice. J. C. Harp stated that the defendant was not running when the shot was fired, but had turned around and was backing off, and that the defendant fired twice at him and his brother; "he shot right on the level I guess, from the sound of the bullet; I heard the bullet." He further said, "My brother and I were pretty close together, in four or five feet of one another. We were not following Tim. I didn't do anything to Tim but give him a shove when he came back to me." H. A. Harp testified that it appeared from the flash of the pistol that the defendant went 15 or 20 steps before he fired, and that he (the witness) was not pursuing him, but was standing perfectly still, and that J. C. Harp also was standing still, and that from the flash of the pistol it appeared that the defendant fired "right towards" his brother and himself; that he heard the bullets whistle "right by" him. There was testimony to the effect that the defendant then ran away and later came back to the barn of J. C. Harp, where he was taken in custody by J. C. Harp and H. A. Harp together, and that he then attempted to shoot J. C. Harp.

There was no testimony in behalf of the defendant. In his statement at the trial he admitted that he fired the pistol, but said that when he shot, he shot downwards, and that he did not fire his pistol until after he was struck in the head. He did not claim that at the time he fired the two shots, either J. C. Harp or H. A. Harp was pursuing him or making any threatening demonstrations against him; and from his statement it was not apparent to him, at the

time he fired the shots, that he was in any danger from either or both of the Harps.

According to the testimony for the State, the defendant committed an assault and battery on J. C. Harp, when he "moved up to" him and "grabbed hold of him," which J. C. Harp had the right to repel with such force as might be necessary; and what J. C. Harp was authorized to do in resisting this assault H. A. Harp was likewise authorized to do in defense of his brother, if at that exact time it appeared to him to be necessary. Even if the assault on the defendant by J. C. Harp or H. A. Harp (whichever one of the two "shoved" or struck him first) was not justified by the conduct and the language of the defendant, it did not authorize or justify him in firing upon them with a deadly weapon, when there was no reason for him to apprehend at the time that any necessity whatever existed to thereby protect himself. Regardless of the preceding provocation, there was, at the time these two shots were fired by the defendant, both under the evidence and under the defendant's statement, no sufficient justification therefor, notwithstanding the defendant indicated, in his rambling and largely irrelevant statement, that he was apprehensive of danger to himself, and fired the pistol "downward," on the idea, as expressed by him, that "If I don't kind of defend myself, they will catch me sure enough." The evidence discloses that he was drunk, that there was no real danger confronting him at the time he fired the pistol, and that there was no apparent danger then threatening him; and certainly he could not be justified in firing a deadly weapon at another merely because he entertained, not the fears of a reasonable man, but the unreasonable apprehensions or hallucinations of one under the influence of intoxicants. It is unnecessary to discuss further the general grounds of the motion for a new trial, since it is apparent from the record that there was ample evidence to sustain the verdict; and this too is candidly admitted by able counsel for plaintiff in error.

1. Objection is urged in the first ground of the amendment to the motion for a new trial, because the court submitted to the consideration of the jury the law touching the right of one brother to defend another (in the event they should find that the defendant made an assault upon J. C. Harp), and instructed them that H. A. Harp would have the right to use such means and force to protect

his brother as he could have lawfully used if the assault had been made upon himself, and that "the defendant would have no more right to resent such, or would be no more justifiable in resisting such, than he would be if the assault had been made upon the one that inflicted the blow upon him;" and objection is also made to the charge to the effect that a man could not, under the law, bring about the necessity for another to attack him, and then justify a felonious counter-attack upon the person attacking him, and that if one by his conduct or manner brought about the necessity for another to attack him, he could not take the life of such person or commit a felonious assault upon him, and then justify his act by reason of the attack; the error complained of being that the charge was not applicable, under the evidence submitted in the case; that the question as to the right of one brother to defend another was not presented by the evidence; and that the evidence did not authorize a charge on the subject of a person bringing about the necessity of defending himself against the assaults of another. There is no merit in this exception. It appears to us that the charge on this subject was properly adjusted to the evidence, and in fact was required thereby, since H. A. Harp testified that he struck the defendant with his pistol and knocked him down *after* the defendant had seized his brother J. C. Harp; and, in effect, that he did so in order to protect his brother; and both witnesses testified that no justifying cause preceded the assault made by the defendant on J. C. Harp.

2. The next ground of the motion for a new trial complains that the court instructed the jury that should they find the defendant guilty of the offense of assault with intent to murder, they had the authority, if they saw proper to do so, to recommend a misdemeanor punishment, and in that event the form of their verdict would be, "We, the jury, find the defendant guilty and recommend misdemeanor punishment," and that in the event that the court approved the recommendation, a misdemeanor punishment would be inflicted instead of a felony punishment. "If you do not believe he is guilty of that offense, or if you have a reasonable doubt in your mind of that, then acquit him of assault with intent to murder, and then you may inquire into the lower grade of offense in regard to which I have charged you, that of shooting at another; and if you determine that the defendant is guilty of the offense of

shooting at another, the form of your verdict would be, 'We, the jury, find the defendant guilty of shooting at another.' That is a felony, only it is a lower grade of felony than an assault with intent to murder, and you have the right to add a recommendation to misdemeanor punishment to a verdict of that character, under the same conditions as I have just explained to you that you could add one to a verdict of guilty of assault with intent to murder; and should you return a verdict of that character, the form of that verdict would be, 'We, the jury, find the defendant guilty of shooting at another, and recommend a misdemeanor punishment.' "

It is contended by counsel for plaintiff in error, that while the court properly instructed the jury as to the recommendation for a misdemeanor punishment in the event they should find the defendant guilty of assault with intent to murder, the court did not properly instruct them as to the recommendation in the event they should find (as they did) that he was guilty of shooting at another; for the reason that the court failed to instruct them specifically that if they found the defendant guilty of shooting at another, and recommended that he be punished as for a misdemeanor, a misdemeanor punishment would be inflicted instead of a felony punishment, in the event that the court approved this recommendation. It is contended that the instruction given did not plainly inform the jury that the recommendation that the defendant be punished as for a misdemeanor would not be effective, should they find the defendant guilty of shooting at another, unless approved by the court. It appears to us that any jury of ordinary intelligence would readily understand from the charge objected to that they had the right to recommend that the defendant be punished as for a misdemeanor in case they found him guilty of the charge of shooting at another; and had the judge omitted entirely to instruct the jury that their recommendation would only be effective if approved by him, this could have worked no harm to the defendant, under the circumstances of the case, since the jury would have been left to infer that such a recommendation would be *binding* upon the court, whether approved by him or not, as he plainly instructed them that they had the "right" to add a recommendation that the defendant be punished as for a misdemeanor, and it appears that the jury declined altogether to recommend the defendant, but found him guilty of shooting at another, without making any recommendation.

As suggested in *Taylor* v. *State*, 14 *Ga. App.* 492 (81 S. E. 372), where a defendant is convicted of a felony and the jury recommends that he be punished as for a misdemeanor, ordinarily (and in fact in any case where the guilt of the accused is not established by unequivocal and convincing testimony) it might be reasonably assumed that the jury were perhaps influenced in reaching a verdict of guilty by the instruction that they might recommend as for a misdemeanor, and hence might find the defendant guilty, *with* such a recommendation, where they would not háve done so had they been informed by the judge that the recommendation would be ineffectual unless approved by him. Where the jury declined to recommend, after being plainly informed of their right to do so, we do not think the defendant could have suffered any harm from the failure to instruct the jury that the recommendation would only be effective if approved by him; since the jury were thus left to believe that their recommendation would be binding *without the approval of the court,* and nevertheless declined to exercise the clemency which they *might* therefore have inferred was absolutely in their power; and it is apparent from this fact that they not only did not desire to exercise the clemency which the law authorized them to show towards the defendant, but that as to his guilt of the crime of shooting at another they had no doubt which they wished to resolve in his favor by a recommendation that he be punished as for a misdemeanor only. Counsel for the plaintiff in error does not insist that the court did not properly charge the jury as to the weight and effect of their recommendation that the defendant be punished as for a misdemeanor if they found him guilty of assault with intent to murder; and where, in the same connection, the court instructed the jury that if they found the defendant guilty of shooting at another, it was a lower grade of a felony than an assault with intent to murder, and they would "have the right to add a recommendation to misdemeanor punishment to a verdict of that character, *under the same conditions* as I have just explained to you that you could add one to a verdict of guilty of assault with intent to murder," we think the charge amply guarded all the rights of the accused. *Judgment affirmed. Broyles, J., not presiding.*

Russell, C. J., concurring specially: I concur with great doubt as to the first special assignment of error, and especially for the reason that, were I to disagree, the result would be the same,—the judgment in that event being affirmed by operation of law.